IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL T. BARRY, II, Michael T. Barry, personal representative, and | ) ) ) ) |
| MICHAEL T. BARRY, individually as natural father of Michael T. Barry, II, deceased | ) ) ) ) Cause No. 4:10-cv-00265-AGF |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND REJECT SETTLEMENT AGREEMENT**

COMES NOW, Diana Childers by and through her attorney, Melissa Featherston, and for her Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(a) and R.S.Mo. §537.095.2 and her Motion to Reject the Settlement Agreement, states as follows:

**STATEMENT OF FACTS**

On July 5, 2009 Michael T. Barry II was a passenger on a motorcycle operated in St. Louis, Missouri.  The driver lost control of the motorcycle, which led to an accident and the death of the driver and Michael T. Barry II.  On December 16, 2009 a Probate Estate was opened in relation to Michael T. Barry II, in Saint Charles County Circuit Court.  On February 3, 2010 Michael Barry, the father of the decedent, filed a Petition for Damages both as the representative for the Estate and personally, seeking a Declaratory Judgment that seeks determination of whether certain insurance policies cover the decedent, damages for Breach of Contract for the

Defendant State Farm's failure to pay uninsured motorist benefits under the policies and damages for Vexatious Refusal to pay.  The case was removed to this Court on or about February 12, 2010 and since removal the parties have engaged in substantial discovery and settlement negotiations.  Pursuant to those negotiations, Michael T. Barry and the Defendant State Farm have reached an agreement regarding the claims under the insurance policies purchased by Michael T. Barry.  As this matter springs from a Wrongful Death claim, the Court scheduled a hearing to review the settlement agreement on October 19, 2011.

At the hearing Ms. Childers, the mother of Michael T. Barry II, appeared by and through her counsel Melissa Featherston and sought a continuance of the hearing.  Ms. Childers notified the Court and the parties that she, in fact, also owned a number of policies under which Michael T. Barry II was covered.  The Court graciously granted the request of Ms. Childers and has continued the hearing pending the filing of Motions illustrating Ms. Childers' position.

## ARGUMENT

Ms. Childers as the Mother of the decedent, Michael T. Barry II, is a member of the first class capable of bringing a Wrongful Death action.  R.S.Mo. § 537.080.1(1).  As such, she is afforded the right to intervene in this matter under Missouri statute.  Additionally, the Court should not approve of the Settlement Agreement presented by Michael T. Barry and the Defendant State Farm as it is not adequate given the fact that there are remaining policies, in the value of 1.2 million dollars that are not addressed by the Settlement other than foreclosing any future action upon them.

**A. Ms. Childers is Entitled to Share in the Proceeds of any Settlement and is Therefore Granted the Right to Intervene in This Matter at any Time Before Entry of Judgment or Approval of Settlement.**

The parties in this case seek approval of the settlement agreement pursuant to Missouri Revised Statute § 537.095.  Subsection 2 of the statute states that "When any settlement is made…by any plaintiff ad litem…the proceeds thereof shall be…distributed according to the laws of descent…provided that any person entitled to share in the proceeds shall have the right to intervene at any time before any judgment is entered or settlement approved under this section." R.S.Mo. §537.095(2).

In **Denton v. Soonattrukal**, the court noted that the Wrongful Death cause of action in Missouri is based in statute and cannot be found in the common law.  49 S.W.3d 517, 520 (Mo.App.S.D., 2004).  Additionally, in interpreting the interaction between Missouri's savings clause and a wrongful death action, the court stated that the statute set up "…a system, based on classes of plaintiffs, such as beneficiaries and "then delineates the order in which various classes are entitled to pursue a claim."" **Id**. citing **Schiles v. Gaertner**, 659 S.W.2d 791, 793 (Mo.App. 1983).  The first class of persons able to bring a case are the children of the decedent, the spouse or the parents of the decedent, as their relationship to the decedent makes their interest paramount.  **Id**. at 521, 523.  Additionally, the statute allows for only one action for the wrongful death and that is indivisible between the class members.  **Id**. at 522; *See also* **Stephens v. Henson**, 772 S.W.2d 706, 710 (Mo.App.S.D. 1989) ([l]imitation of one action per defendant is not "…intended to prohibit the joinder of those who wish to participate and who are entitled to do so by their class.")  This fact must be meshed with the purpose of the wrongful death statute, which is "…to provide compensation for the loss of companionship, comfort, instruction, guidance and counsel, etc., to statutorily designated, and hence a limited number, of relatives of a

decedent wrongfully killed by a tortfeasor," while providing this protection to "…the greatest number of beneficiaries…" within the class.  **Id**. at 524, 523.  It is this dichotomy of limiting recovery to a class but then maximizing the number of individuals in the class that necessitates the rule that other claimants, within the class, may intervene as a matter of right.  **Id**. at 523.  Without the ability to intervene prior to the entry of judgment or approval of settlement, class members that are not party to the lawsuit are left without recourse against the defendant and must challenge the validity of the judgment or settlement under Missouri Rule 74.06.

Here, no judgment has been entered and while a settlement agreement has been brought forth it has not yet been approved.  As such, under the plain language of the statute, which allows intervention at any point prior to entry of judgment or approval of settlement, Ms. Childers is able to intervene as a party.  This is in line with the policy that is to provide the greatest number of parties within the class the ability to recover for their loss.  To deny her Motion to Intervene in this matter forecloses her ability to seek compensation for her substantial loss.  The statute allows for intervention because of the situation at hand.

In conclusion, the Wrongful Death Statute creates classes of beneficiaries so that it can maximize the amount of individuals within those classes and the amount of compensation those persons within the class are able to obtain.  Further, the statute allows class members to intervene in a case up until the finalization of a case, which is in line with the policy behind the Wrongful Death statutes.  Here, the case has not yet been finalized and Ms. Childers is in the same class of beneficiaries as the Plaintiff; as such, it is her right to intervene in this matter and her Motion to Intervene should be granted.

**B. The Settlement Agreement Should Not be Approved Because the Amount of the Settlement is Inadequate Because Ms. Childers Has Insurance Policies That Apply to This Action and They Have Not Been Accounted For.**

Ms. Childers has six motor vehicle insurance policies with the Defendant, with applicable values that total 1.2 million dollars ($1,200,000.00) in coverage. Under the policies State Farm is obliged to pay for bodily injury to an insured. Under the terms of the policy an insured can be a relative, which is "…a person related to you or your spouse by blood, marriage, or adoption who resides primarily with you."

Prior to the death of the decedent he resided with his father and mother. At the age of 13 the decedent switched from having his primary residence with Ms. Childers, to having his primary residence with his father, Mr. Barry. From this time forward, Ms. Childers paid child support to Mr. Barry and later directly to the decedent, and regularly exercised temporary custody of the decedent. Upon the decedent's graduation from high school the decedent would occasionally stay at the home of Ms. Childers and in the spring prior to his death he stayed at the domicile of Ms. Childers for approximately one month. Throughout his life the decedent regularly used Ms. Childers' vehicles and ate meals at her domicile.

**1. The Decedent Was an Insured Under Ms. Childers' Policies with State Farm as He Maintained a Residence with Ms. Childers.**

When considering whether or not an individual is a resident of a particular household there are two guidelines that the courts have set out to make that determination. First, the Court "…should consider whether the living arrangement is permanent or temporary, and second, whether the household acts as a unified family unit." *American Standard Ins. Co. of Wisconsin v. Forsythe*, 915 F.2d 1212, 1215-1216 (C.A.8(Mo.)1990).

It is important to note from the outset that a person may have "…only one legal domicile at one time, but he may have more than one residence," and this is true for purposes of insurance

coverage.  **Pruitt v. Farmers Insurance Co**., 950 S.W.2d 659, 663 (Mo.App.S.D. 1997). "Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home." **Id.**  "Resident connotes something less than domicile." **Id**. at 664.  Relative to the permanency of the residency "…a continuity of a residence for an indefinite time may be sufficient." **Id**.

The more important consideration appears to be the level of integration into the household that is the purported residence.  In **Pruitt**, the court noted that the insured was integrated into his uncle's household having moved there temporarily from Texas.  **Id.** at 665. They noted that the insured ate his meals with the rest of the family, sought permission for activities from the head of household, was subject to discipline, slept and ate at the home and was treated as a family member.  **Id**.  In **Forsythe**, the insured, who was actually away at school at the time of the accident, maintained a mailing address at her grandparents, kept her belongings there, left her child there and considered her grandparents' home as her own.  **Forsythe** at 1216.

Finally, it must be stated that courts generally "…favor an interpretation to provide insurance coverage."  **Pruitt** at 664.  This is because "…insurance is designed to furnish protection to the insured, not defeat it…and as drafter of the policy, the insurance company is in the better position to remove ambiguity from the contract." **Id.**

Here, the decedent was a resident of Ms. Childers' household.  He ate meals there frequently, he received spending money from her on a consistent basis, in the spring prior to the accident he actually was domiciled at the residence, while at the domicile he was subject to Ms. Childers' rules and was treated as a member of the household and not a guest.  As such, he was a resident of the household.  Further, the policy's term of "primarily" resides is a nullity and is ambiguous at best.  The courts have shown that the term residence is chameleon like in nature

and by definition amorphous.  As such, it is impossible to quantify, which makes the modifier "primarily" a null value.  In the alternative, primarily is ambiguous, as it does not give any sure value.  As such, due to the nature of the decedent's relationship to Ms. Childers' household, he was a resident of the household and thereby insured under her policies with the Defendant.

In conclusion, an individual may have more than one residence and residence is more a state of being and general feeling than hardened rule.  It is whether one has been accepted and treated as part of the household's family.  Here, that was the case.  The decedent was the son of Ms. Childers and was treated with the care and love any son would be and he accepted that and acted as part of the household.  As such, he was a resident of Ms. Childers' home.

### 2. The Pending Settlement Agreement Should be Rejected as It is Unreasonable and Inadequate In Light of the Additional Policies of Ms. Childers.

The Wrongful Death statute sets forth classes of beneficiaries that are able to recover.  Under the statute, class members may settle their claim with approval of the court.  R.S.Mo. § 537.095.  Under the statute the court should apportion the proceeds according to the law of descent unless it would be inequitable.  **Id**.  As the Wrongful Death statute creates classes and contemplates settlement by individual parties within the class, Federal rules regarding approval of class action settlements provide a framework that is analogous to the situation presented here.  In that framework a settlement should only be approved where it is fair, reasonable and adequate.  **In re Wireless Tele. Fed. Cost Recovery Fees Lit**. 396 F.3d 922, 932 (8th Cir. 2005).  There are four factors the first of which is "…the merits of the plaintiff's case, weighed against the terms of the settlement…the defendant's financial condition…the complexity and expense of further litigation and…the amount of opposition to the settlement." **Id**.  The most important factor is the strength of the case weighed against the amount of the settlement.  **Id**.

**In re BankAmerica Corp. Securities Litigation** applied the test and found that the settlement presented must be rejected.  210 F.R.D. 694 (E.D.Mo. 2002).  The court noted that continued litigation would be very risky for the plaintiffs and the settlement that was offered was one of the largest the court had seen.  **Id**. at 700.  The court also stated that the complexity and expense of further litigation weighed in favor of approving the settlement.  **Id**. at 702.  The financial condition of the defendant did not weigh in favor of the settlement.  **Id**.  However, one of the objections was that the settlement failed to offer any recovery to a portion of the class.  **Id**. at 712.  Based on that fact the court refused to approve the settlement agreement as it was unfair and inadequate for the subclass that had no recovery under the agreement.  **Id**. at 714.

Here, the situation is similar.  The class in this action consists of the decedent's father and mother.  While continued litigation is inherently risky and there is a settlement offer in excess of a quarter of a million dollars and continued litigation could be complex and expensive the objection weighs against settlement.  Like the **BankAmerica** case, the proposed settlement serves to take from a class member any recovery.  Under the settlement agreement Ms. Childers is entitled only to funeral costs and she will be forced to give up claims that are valued at over One Million Dollars, with no real option to resurrect those claims.  As the settlement contemplates only a third of the value State Farm issued and forecloses any action on the remainder, the settlement must be rejected.

In conclusion, the court should look to the Federal class action settlement approval test when deciding to approve the settlement at hand.  As the wrongful death statute in Missouri sets up a class based recovery structure the Federal test is analogous and instructive.  There the settlement must be fair and reasonable; unfortunately, that is not the case here because the

settlement fails to account for two thirds of value issued by State Farm and in practice bars recovery of a class member and thus the settlement agreement should be rejected.

## CONCLUSION

The Court should allow Ms. Childers' Motion to Intervene.  Under the Missouri Wrongful Death statutes as a member of the first class able to file suit she is afforded the right to intervene at any point prior to entry of judgment or approval of settlement.  Allowing Ms. Childers to intervene fits with the policy behind the statutes that seeks to limit the amount of people within a class, while spreading the recovery as much as possible between the parties within the class.  To not allow Ms. Childers' intervention would leave her without any recourse against the Defendant for the policies she owns.

Those policies apply in this matter as the decedent was an insured under them.  As the decedent was the son of Ms. Childers and frequently stayed at her household, received support from Ms. Childers and was an integrated member of the household he resided with her, which means that he was covered under Ms. Childers' policies with State Farm.

Further, as these policies apply to this case the settlement agreement is unfair and inadequate.  The settlement agreement only covers a third of the total value of the policies issued by State Farm and it fails to apportion damages to a class member.  As such, the agreement is inadequate and should be rejected.

WHEREFORE, Ms. Childers prays for an Order from this Court granting her Motion to Intervene and Rejecting the Settlement Agreement as Presented.

        /s/ Melissa A. Featherston
Melissa A. Featherston, #MO54563
FEATHERSTON LAW FIRM
8050 Watson Road, Suite 241
St. Louis, MO 63119
(314) 842-5222
(314) 842-5212
Attorney for Diana Childers

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to the following:

Ryan R. Cox, #MO52655
RYAN R. COX AND ASSOCIATES, L.L.C.
320 N. Fifth Street
St. Charles, MO 63301
(636) 946-6886
(636) 947-7516
rrc@rrcandassociates.com
*Attorney for Plaintiff*

Scott C. Harper, #MO31378
Aaron I Mandel, #MO39692
John A. Mazzei, #MO51398
BRINKER AND DOYEN, L.L.P.
34 N. Meramec Ave., 5th Floor
Clayton, MO 63105
(314) 863-6311
Fax – (314) 863-8197
harper@brinkerdoyen.com
amandel@brinkerdoyen.com
jmazzei@brinkerdoyen.com
*Attorneys for Defendant State Farm*

        /s/ Melissa A. Featherston